John E. Schwarz, et. al. vs. Tunis S. Wendell.

First Circuit.

Schwarz.
vs.
Wendell.

A plea of a stated account must aver the accounts settled all dealings between the parties; that the accounts were *just* and *fair*, and due, and these averments must be supported by an answer to the same effect.

A plea of a release unsupported by an answer is insufficient.

The bill of complaint alleges that on the 6th of March, 1836, Tunis S. Wendell, who was then acting as trustee of the complainant, Catharine Schwarz, inquired of said Catharine whether it was not probable, that the interests which the co-heirs of Abraham Sheridan held in common with said Catharine in 17 inlots, and 4 out lots in the Borough of Erie, Pennsylvania, could be purchased; adding at the same time that he had received an offer for the whole property. After some conversation between the said Wendell and the complainant, John E. Schwarz, husband of said Catharine, it was proposed by Wendell and assented to by said John E. Schwarz without consulting Catharine Schwarz, the *cestui que trust*, that he, Wendell, should raise sufficient money to buy the interest in said lots, not held and owned by said Catharine, and for that purpose, he said Wendell, should visit the city of Philadelphia where the persons owning the property resided and endeavor to purchase the same; and for his trouble should receive one half of the profits arising from the purchase of said lots. That on the day following this interview, the said John E. and Catharine came to the city of Detroit at the solicitation of Wendell, and the said Wendell then required said Catharine to execute a note of that date for $4000, payable in 90 days to him or his order at the Bank of Michigan, to enable him to raise the necessary means to purchase the property. Against this proposition John E. S'z. protested and said it was a variation from his (Wendell's) proposition of the day before, to furnish the money, and that to require the said Catharine to furnish the money and give him, the said Wendell a share in the expected profits, would be unjust, to which Wendell replied, that he had made his calculations and preparations to commence his journey, and if they declined sending him, $2000 would not indemnify him against the damage he would thereby suffer. The said

First Circuit

Schwarz.
vs
Wendell.

Catharine then without understanding the proposition or terms upon which Wendell proposed to buy said property, and being urged by her husband, John E. Schwarz, and the said Wendell, and acting on their advice, executed the said note and delivered it to Wendell.

Immediately after the said Wendell drew up the memorandum of agreement, set forth in the bill of complaint between himself and the said John E. Schwarz, on the part of said Catharine, reciting that, as he had procured on that day $4000 from the Bank of Michigan for the purpose of purchasing the interests of Richard P. Harding and John G. Thomas in the 17 inlots and 4 out lots, in the Borough of Erie, Pennsylvania ; that he, said Wendell should immediately proceed to Philadelphia for the purpose of purchasing the said property ; and that he should have one half of all the profits arising from the purchase of said property, or if he succeeded in only purchasing part of the property, he was to have one half the profits on the portion acquired, and his expenses. And it was further provided in said agreement if he did not succeed in making the purchase, said Catharine should pay his travelling expenses merely, and it was also agreed that if he purchased any other property it should be for the benefit of the said Catharine. The bill alleges this memorandum was signed by the said Wendell and John E. Schwarz without the knowledge, direction or consent of the said Catharine. On the 8th March Wendell started, having previously obtained the amount of the note made by said Catharine of the Bank of Michigan. On the 19th March he purchased of John G. Thomas and wife their interest in said lots, being one undivided third part, for $1200, and took the title in his name as trustee of the said Catharine. Wendell then made other purchases of real estate for said Catharine to the amount of about $1,600, and paid therefor out of the money derived from said note of $4000. Complainants cannot state the amount precisely of all the purchases as no account of said $4000 has been rendered, and all the deeds not being in the possession of the complainants.

Bill further states that no part of said $4000 note has ever been repaid to the complainants, but alleges that a large sum remains unexpended for the use of the said Catharine, and unaccounted for by said Wendell. The $4000 note became due on the 10th of June, 1836, and on request of Wendell, that some other person should be

procured as an endorser on the note which was to be made to renew
the one falling due; the said Catharine procured Eurotas P. Hastings
to endorse the same. This renewed note when it became due at the
bank on the 31st of August, 1836, was paid by said Wendell out of
money belonging to said Catharine.

Bill further states that Wendell on or about Sept. 3d, 1836, mentioned that he had a chance to sell his share of the Erie property to one Abijah Fross, who complainants believe was a man of little or no credit or responsibility, for the sum of $5000, but offered to sell it to said Catharine, and take a certain mortgage which she held against one Joshua Boyer, and to receive the balance in a note of hand on long time, to which said complainant, John E. said he would consent if Catharine was willing to agree thereto. In a few days after an assignment of the mortgage and a note for the balance of the $5000 was prepared, which the said Catharine declined signing, saying that the said Wendell must wait for his share of the profits until the property was sold.

The bill of complaint further states that afterwards and on or about the commencement of 1837, John E. and Catharine Schwarz, on the one part and Wendell on the other, became dissatisfied with each other, and it was agreed between them that the said Wendell should transfer all the trust property in his possession to the complainant, Eurotas P. Hastings appointed by said Catharine as her trustee to hold the same, and papers, deeds and conveyances were prepared, and on the 28th January, 1837, said John E. and Catharine and Eurotas P. met said Wendell to have him execute the said deeds, that on the same day after the deeds were laid on the table, but before their execution said Wendell presented and required said Catharine to sign as an implied condition of his transferring said trust property, a note bearing date that day for $3,980 24, payable in three years from date to said Wendell or bearer. That said demand was a surprize upon complainants, the said Wendell also at the same time produced a memorandum not intelligible to them, wherein he charged said Catharine $5000 for his share of the Erie property, and after deducting certain items presented the said balance of $3,980 24.

The said Catharine insisted that the demand of said Wendell was unjust. but he insisting upon it, she for the purpose of avoiding any

First Circuit.

Schwarz.
vs
Wendell.

difficulty, and to get the property out of his hands, after hastily consulting with John E. Schwarz, signed said note. Wendell, before signing the deeds requested said Hastings as trustee of said Catharine to sign said note, and he without any knowledge of the facts and circumstances and at the request of said Catharine, signed it. The note was delivered to defendant and the convoyances executed and delivered.

To the bill the defendant filed a plea.

The plea of the defendant states that at the time when the defendant assigned the trust estate to Hastings as is stated in the bill, he rendered to the said Catharine and Hastings, an account of all money and property received by him as, trustee, and an account was then taken between the parties of all money received and paid out by defendant as such trustee, and all his transactions as such trustee, and on such accounting there was found due from said Catharine to said defendant $4,160 63, and that balance was stated, agreed upon and acquiesced in, by the said Catharine, Eurotas P. and John E. and thereupon defendant took a note from and executed by the said John E. for $180 59 and he then took from said Catharine and Eurotas P. as trustee, another note executed by them for $3,980 24, payable to defendant or bearer, three years after date, with interest at six per cent. per annum, and dated the same day, January 28, 1837, the said two notes amounting together to the said sum of $4,160 83, the former of which notes is in possession of defendant, but the latter has been sold and transferred by him.

The plea avers the settlement of all things relative to the trust, and the execution of an indenture by the said John E. and Catharine and the said Eurotas P. as her trustee, and the said defendant of the same date with said notes, wherein after reciting his having formerly acted as trustee, his having executed deeds, entered into covenants, and done other acts at the request of said Catharine and John E. which might create a personal liability on his part, and his having assigned the trust, the said John E. for himself, his heirs &c., in consideration of the premises and of the sum of one dollar paid, covenanted and agreed to save harmless and indemnified, and keep defended the said defendant of, and from all acts, deeds and covenants, by him as such trustee done or executed, and from all liabilities existing

or which might arise by reason of his having acted as such trustee,
and to reimburse him for all losses he might be compelled to sustain
by reason thereof. And the said Eurotas P. for the like consideration
covenanted and agreed in like manner, as the said John E. so far as the
funds and property belonging to the said Catharine, and in his hands,
as trustee, would enable him, and to that extent and no more.

Joy & Porter, for complainants.

The plea is insufficient for two reasons.

*First.* It is not avered in the plea that the account which was
stated was a true and just account, to the best of the defendants know-
ledge and belief. This is necessary, although the bill does not im-
peach the account on the ground of fraud or error. 3 *J. C. R.* 388,
389, 390, 391; *Beames Pl.* 230; 3 *Atk. R.* 70; *Coop. Pl.* 279;
*Mitf. Pl.* 260; 4 *Paige R.* 195.

*Second.* The plea does not put in issue the matters charged in
the bill. It does not deny the constructive fraud alleged, nor the
imposition. The plea should deny the fraud charged, or the facts
which constitute the fraud. 4 *J. C R.* 696; 3 *Paige, R.* 277, 278,
2, *Atk. R.* 119.

D. Goodwin, in support of the plea.

The plea sets forth an accounting, settlement, notes for balance,
and an agreement by the complainants to indemnify the defendant
against all his doings as trustee, and all losses and liabilities arising
therefrom.

*First.* To a bill for an account, an account stated and a settlement,
constitute a good plea in bar, and such account can be opened only in
case of a palpable mistake or fraud. So a release is a good bar to such
or any bill, and can only be set aside for fraud. 2 *Cond. Rep.* 116.

*Second.* Here not only a settlement and a note for the balance due
and agreed upon on accounting are shown, but also an agreement by
*these very complainants* to indemnify the defendant in respect to the
matters complained of. This is stronger than a release. If com-
plainants succeed, defendant has directly an action against them co-
extensive with their recovery. This a Court of Chancery will never
tolerate, on the contrary, if complainants could for the cause alleg-
ed, proceed and recover at law, a Court of Chancery would upon this

agreement enjoin them from so d oing and prevent the cross actions On the covenant Schwarz and Hastings are personally liable, as Wen- dell was on the note he gave to the bank. 2 *Wheat R.* 45; 4 *Pet Cond. Rep.* 25; 2 *Am. Com. Law,* 193; 8 *Cow. R.* 31; 9 *John. R.* 334; 7 *Cow. R.* 453.

*Third.* Upon the bill there is not enough shown to entitle com- plainants to relief. The settlement was long after the transactions out of which the complaint arises, and surely parties, *cestui que trusts* as well as others, may settle their own affairs, and here it is done· 1 *Pet. Dig.* 432; 1 *Bald. C. C. R.* 418. A *cestni que trust* whether feme covert or otherwise, is in equity owner of the estate, and may devise, alien and incumber for debts. A married woman may even mortgage the estate held in trust for her husbands debts. 1 *Madd. R.* 453; 2 *Kent Com.* 162.

*Fourth.* The agreement to indemnify (which is tantamount to a release and more) is not mentioned in the bill. It must have full and complete effect. It forms a perfect bar and could only be set aside for fraud, clearly and conclusively shown, and upon allegations and averments in a bill framed with that view.

THE CHANCELLOR.—The plea in this case is insufficient. It merely sets up the settlement, release and covenants, and that the note was given for the balance found due to him. It does not state the manner in which the account was rendered.

It is alleged in the bill that the claim for which the note in ques- tion was given, arose from the profits of the speculation upon the Erie lots therein mentioned; that the profits, if any, arose from the use of the funds of the cestui que trust, and that the amount was presented on a slip of paper, and unintelligible, and that the pres- ent trustee, Mr. Hastings, executed the covenant without any knowl- edge of the facts.

The rule is very well stated by Lord Reddesdale in the case of *Roche* vs. *Morgell* 2 *Sch., Lcf.* 726. He says:

"Upon the argument of a plea every fact stated in the bill and " not denied by the answer in support of the plea, must be taken as " true. The plea to the relief (of a stated account,) ought to have " averred that the accounts, settled all dealings between the parties; " that the accounts were *just* and *fair* and due; *and these averments*

"ought to have been supported by an answer to the same effect." First Circuit

The same rule is also substantially stated by the same high authority on the subject of pleading in *Mit. Pl.* 262, &c. There are many other authorities sustaining this rule.

Schwarz.
*vs.*
Wendell.

Without going into the consideration of the other point raised at the hearing as to the relation of the parties as trustee and cestui que trust at this time, (which would now perhaps be admitted,) I must say that this seems to me a very proper case for the application of the rule. The covenant entered into by Mr. Hastings, the new trustee, and the other complainants under the circumstances alleged in the bill, cannot vary the rule.

The plea must be overruled.

A rehearing of this cause on the plea filed was granted.

Joy & Porter, for complainants.

D. Goodwin, for defendants.

The Chancellor.—A plea is a special answer to a bill demanding the judgment of the court in the first instance whether the special matter urged by it, does not debar the complainant from his title to an answer which the bill requires.

The rule as to pleas which was stated on a former occasion is admitted to be the correct one ; the propriety of its application to the case under consideration is however questioned.

It is not necessrry to reiterate at much length the allegations of this bill as they were before fully stated. The allegation that this claim of five thousand dollars in substance and fact arose from the use of the trust funds, used in a supposed speculation in lands at Erie is not denied. It is further alleged that this demand was unexpectedly made when the parties had met together to execute the deeds. That it was a surprise upon the cestui que trust, that the defendant insisted that the cestui que trust should purchase this interest, that he insisted upon its present settlement, that it was yielded to hastily and for the purpose of getting the property out of the hands of the defendant; that the new trustee signed the note without any knowledge of the facts and circumstances stated in the bill.

It is further charged that no part of the $4,000 received by the trustee has been repaid to the complainants or any of them, and that

they fully believe that a large balance of said money still remains in the hands of said defendant, and unaccounted for by him, and that the account was presented on a slip of paper and unintelligible. The bill also prays an account of this money, as well as to be relieved against the note, and for such further and other relief as the circumstances of the case may require. Now whether these allegations relate to one transaction or to one or more items of a complicated account can make no difference; and without reference to the covenants set up by way of defence in the plea, the plea unsupported by an answer cannot bar the complainants from an answer to which they are entitled, and the rules of pleading as before stated are correct, and applicable to this case.

But it is insisted that the covenants not being alluded to in the bill, constitute a bar to the relief. The indenture containing these covenants bears even date with the alleged settlement and note. It is as follows, as stated in the plea (after the preliminary recital,) that "this defendant had executed various deeds, entered into several "covenants and done other matters at the request of the parties "of the first part, (the said Catharine and the said John E.,)— "some or all of which might then create a personal liability on the " part of the defendant, and that this defendant had by deeds of equal " date therewith assigned over to the said Eurotus P. his heirs and as- "signs at the request and by the desire and appointment of the said " Catharine, all the said trusts and all the trust property belonging "to the said Catharine heretofore vested in him; and that the said John "E. in and by the said indenture, in consideration of the premises and " of the sum of one dollar therein acknowledged to have been received " from this defendant, did for himself, his heirs, executors and ad- " ministrators, covenant, promise and agree to and with this defend- " ant, his heirs, executors and administrators, that he, the said John " E., should and would well and truly save harmless and indemnified, " and keep defended this defendant and his legal representatives of and " from all acts, deeds, covenants and other doings which he, this de- " fendant at any time theretofore had done, committed, executed or "entered into as trustee as aforesaid, or in the execution of the " said trusts, and of and from all consequences and liabilities of ev- "ery kind or nature then existing, or which might thereafter arise,

First Circuit.

Schwarz.
vs.
Wendell.

" for or by reason of his (this defendant's) having acted as such trust " tee, and should and would reimburse this defendant and his said rep- " resentatives all such losses or sums of money, if any, as he or they " might be legally compelled to pay or sustain for or by reason of " his (this defendant's) having accepted the said trusts."

It was held in the case of *Roche vs. Morgell*, that a plea of a release unsupported by an answer was insufficient, although the same objection was there urged, which is now taken, that the bill did not refer to it, and pray that it might be set aside.

Certainly no greater effect can be given to this statement than to an express release. On the contrary, I have strong doubts whether the covenants set out in this plea were intended to extend to, or do in fact reach the case made by the bill at all.

The manifest intent and object of this instrument was to indemnify and save harmless the trustee from any act done by him in the execution of his trust. The prayer of the bill among other things, is that he may account for money belonging to the trust fund, which they charge to be in his hands unaccounted for.

It would in my view be going very far to say that these covenants shall bar and preclude the complainants from an answer, when in fact they were intended for another and a different purpose. But I do not intend to dwell upon this view of the case, as it is not now intended to preclude the defendant from whatever benefit he can properly derive from this defence when supported by an answer.

Enough has been shown, I think to justify the conclusion that the plea is insufficient. To obviate any embarrassment which may be apprehended from the form of the entry, the order will be that the plea stand for an answer with liberty to accept.